**UNITED STATES of America,**
**Appellee,**

v.

**James CARFORA, Appellant.**

**No. 313, Docket 73-1824.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 4, 1973.

Decided Nov. 21, 1973.

---

Feinberg, Circuit Judge, filed a dissenting opinion.

H. Elliot Wales, New York City, for appellant.

Robert B. Hemley, Asst. U. S. Atty., New York City (Paul J. Curran, U. S. Atty., Kenneth R. Feinberg and John D. Gordan III, Asst. U. S. Attys., on the brief), for appellee.

Before MEDINA, FEINBERG and TIMBERS, Circuit Judges.

PER CURIAM:

On this appeal from a judgment entered May 4, 1973 in the Southern District of New York, Murray I. Gurfein, District Judge, after extensive evidentiary hearings, revoking probation and imposing a two year term of imprisonment to be suspended after four months, the sole issue is whether the district judge abused his discretion. We hold that he did not. We affirm.

Revocation of appellant's probation was a sequel to his conviction on January 14, 1972, after a four day jury trial before Judge Gurfein, of nine counts of mail fraud in connection with his fraud-ulent purchase of tickets from certain airlines in violation of 18 U.S.C. § 1341 (1970). On March 6, 1972, Judge Gurfein imposed what strikes us as a lenient sentence: two years probation and a $2500 fine to be paid in installments under the supervision of the probation office. In addition to the usual conditions of probation, a special condition was imposed requiring appellant to make full restitution to the defrauded airlines by April 1, 1972.

Shortly after being placed on probation, appellant was charged with violating his probation. On June 20, 1972, the probation office filed a revocation petition charging that appellant had violated the provision that he make restitution. After notice to appellant, Judge Gurfein held an evidentiary hearing on June 26, at the conclusion of which he stated that he would not consider poverty as a ground for revocation; he modified the restitution schedule and required appellant to make payments to the airlines thereafter through the probation office in monthly installments.

On August 16, 1972, the probation office filed a second revocation petition charging that appellant had violated his probation in three respects: he had failed to report to the probation officer on August 15;[1] he had failed to make the July restitution payment to TWA which he had been ordered to make; and he had made a first installment payment to Eastern Airlines with a check that had bounced. Beginning September 26, 1972 and extending through January 30, 1973, hearings on this revocation petition were held on six separate days. Appellant was required to produce his books and records. He testified on his own behalf. Testimony was taken from appellant's creditors. His bank records were received in evidence.

On May 4, 1973, Judge Gurfein filed an opinion setting forth findings of fact

---

1. Judge Gurfein dismissed this asserted ground for revocation of probation, having found that there was a mix-up in dates and that appellant should have the benefit of the doubt.

**356**

in support of his conclusion that probation should be revoked. While it is true that the judge did not find *in haec verba* that appellant was financially able to make the payments to the airlines which he had been ordered to make, the entire tenor of the findings when read in the context of the record as a whole leaves us with the firm conviction that it was appellant's refusal to make the restitution payments to the airlines, although financially able to do so, that lead to revocation of his probation. After all, the restitution payments due were relatively small: $390 to Eastern Airlines and $364.65 to TWA. The judge found, among other things, that appellant's wholly owned company, Worldwide Electric Corporation, owned a truck, although appellant had falsely testified that it did not own an automobile; certainly a truck is an asset of value. Appellant testified that he had been "robbed" on April 5 and 13, 1972, although he did not report such robberies until the day before the first revocation hearing; presumably one does not claim to have been robbed unless property of value is taken especially when the robberies are offered as an explanation of a loss of assets. There was other evidence of appellant's financial ability to make the restitution payments.

Our careful examination of the record satisfies us that Judge Gurfein's findings are fully supported by the evidence and that they more than adequately warrant his exercise of discretion in revoking probation. The record as a whole clearly establishes that Judge Gurfein intended to, and did, revoke appellant's probation on the ground that he did not fail to make the payments to the airlines because of penury and that he did have the means to pay.

We find no merit in appellant's claims that his probation was revoked on grounds not charged and that the district court did not find that appellant had violated any specific conditions of probation.

We hold that Judge Gurfein acted well within the broad discretion granted to district judges in determining that probation should be revoked.

Affirmed.

FEINBERG, Circuit Judge (dissenting):

I dissent from affirmance of the order revoking probation. I would remand to have Judge Gurfein make specific findings as to the basis for his order. A remand is necessary because it is not at all clear that Carfora's probation was revoked because of his willful failure to make restitution payments. Indeed, it is just as probable—if not more so—that his probation was revoked because he did not conduct himself as an honest businessman, a grievous fault, to be sure, but not one charged in the Government's petition to revoke his probation. If that is the case, a serious constitutional issue, ignored by the majority opinion, is raised. The majority concedes that Judge Gurfein "did not find *in haec verba* that appellant was financially able to make the payments . . . he had been ordered to make." It may well be that this finding was omitted not inadvertently but because the judge revoked probation on a wholly different ground. Under such circumstances, we should remand to be sure of the basis for revocation.

The judgment appealed from was a sequel to Carfora's conviction over a year before of mail fraud, 18 U.S.C. § 1341. Carfora's fraudulent transactions had included the purchase of airplane tickets without intent to pay from Trans World Airlines and Eastern Airlines. In sentencing Carfora in March 1972, Judge Gurfein noted, among other things, that Carfora had had no other recent trouble with the law and was starting to develop a legitimate business. The sentence was lenient—a fine of $2,500 and two years probation, including a special condition that Carfora make full restitution to the defrauded airlines by April 1, 1972.

On June 20, 1972, the United States Probation Office filed a petition to revoke Carfora's probation charging him with failure to make restitution. At a hearing on June 26, Carfora admitted the default but pleaded inability to pay because of assorted unforeseen business difficulties. Expressing an unwillingness to "punish a man if he doesn't have money to pay," Judge Gurfein declined to find a violation of probation and modified the special condition of probation to permit Carfora to make restitution in the form of installment payments.

On August 16, 1972, a second petition to revoke probation was filed in the district court. This time the Probation Office charged that Carfora had violated the conditions of probation by: (1) making a first installment payment of $390 to Eastern Airlines with a check that "bounced"; (2) failing to make a July restitution payment of $364.65 to Trans World Airlines; (3) failing to report to his probation officer on August 15, 1972.[1] At a hearing in September, Carfora did not deny the first two charges; rather, he again excused his failure to make restitution on the ground that he was unable to pay, this time claiming both illness and business difficulties. With respect to the third charge, he claimed an innocent mistake about the scheduled date of the meeting with the probation officer. Judge Gurfein reserved decision pending further inquiry into Carfora's financial situation, and ordered Carfora to make his financial records available to the Government. Five more hearings were held,[2] at which the Government introduced, among other things, extensive evidence of Carfora's various shady dealings with his creditors.

Finally, on May 4, 1973, the judge revoked Carfora's probation, and sentenced him to a two-year term of imprisonment, four months to be served in prison, with the remainder of the sentence suspended. In a written opinion, the judge first recounted the history of the revocation proceedings and then restated the charges specified in the Government's petition of August 16, 1972. See note 1 supra. After declaring that he would accept appellant's explanation for his failure to meet with his probation officer, the judge noted:

> It developed that there had been instances where Carfora allegedly committed fraud upon creditors and breaches of ethical business conduct. He was informed that the Government was making these charges.

The judge then found that the Government had established 11 instances of such misconduct, including Carfora's use of different corporate and trade names to mislead his suppliers and lenders, false testimony concerning the assets possessed by his companies, creation of fictitious accounts receivable to mislead his creditors, and issuance of checks with intent to pass bad checks or with reckless disregard of the state of his bank balance, which was insufficient. Of the 11 instances cited by the judge, most supported the inference that Carfora was without funds.

The judge concluded:

> The picture presented is of a struggling, marginal small business man

---

1. The specifications in the petition were as follows:

1. IN THAT PARTIAL RESTITUTION PAYMENT OF $390 BY THE PROBATIONER PAYABLE TO EASTERN AIRLINES INC., BY POST-DATED CHECK DUE AND PAYABLE ON 7/15/72, WAS RETURNED TO THE PAYEE MARKED "ACCOUNT CLOSED".
2. IN THAT THE PROBATIONER FAILED TO MAKE PARTIAL RESTITUTION PAYMENT OF $364.65 TO TRANSWORLD AIRLINES INC. (TWA) THROUGH THIS OFFICE DURING THE MONTH OF JULY, 1972.
3. IN THAT HE FAILED TO REPORT ON 8/15/72 AS DIRECTED BY THE PROBATION OFFICER.

2. On October 25, and November 29, 1972, and January 15, January 24, and January 30, 1973.

who is willing to rely on shady practices to keep going. He has avoided bankruptcy thus far but at the expense of unwitting lenders. His practices, as disclosed, do not show a probationer worthy of trust.

It is not easy to revoke probation especially when care must be taken not to penalize penury. But I have come to the sad conclusion that probation is not enough of a deterrent for Carfora.

In this court, Carfora argues that the judgment must be set aside because his probation was revoked on a ground never charged in the revocation petition, his failure to conduct himself as an honest businessman. This, says appellant, violated his due process right to be informed of the charges against him. The Government responds that the judge revoked probation on two of the written grounds originally charged, see note 1 supra, and even if that were not so, the judge was entitled to revoke Carfora's probation because of his fraudulent business practices.

The dispute over the basis for revocation of probation in this case underlines my own threshold difficulty with the appeal: I simply am not sure of the theory upon which the district court acted. If the judge revoked probation because Carfora was able, but unwilling, to pay the restitution installments to Eastern Airlines and Trans World Airlines, it may be that this ground for decision

would be sufficiently supported by the evidence. However, the district court made no finding that Carfora had the financial means to make the installment payments, a crucial issue under our holding in United States v. Wilson, 469 F.2d 368 (2 Cir., 1972). See United States v. Taylor, 321 F.2d 339, 341–342 (4th Cir. 1963). Indeed, the judge's opinion suggests, in its description of Carfora as a struggling businessman who has managed to stave off bankruptcy only by defrauding creditors, that the court believed appellant to be in serious financial difficulty. Initially, the evidence concerning Carfora's shady business practices was admitted to impeach appellant's description of his financial situation. Despite this, the record supports Carfora's position that at least during and after the third hearing the Government presented Carfora's allegedly unethical business dealings as an independent ground for revoking probation.[3] And the district court's discussion of these dealings, which constitutes the bulk of its opinion, makes no mention of the limited purpose for which evidence concerning them was initially received; in fact, it refers to the alleged instances of unethical conduct as "charges" which the Government was making against appellant. Thus, it appears quite possible that this conduct provided the basis for the court's decision to revoke probation.

If this is so, however, other issues immediately become significant. There is

---

3. The judge opened the November 29, 1972 hearing by stating:

The purpose of this hearing was to enable the Government to present evidence other than merely evidence that Mr. Carfora is unable to make restitution for financial reasons.

In response, counsel for the Government stated:

The Government at this point is ready, although not today, to do two things, and one is to prove that Mr. Carfora deliberately failed to make restitution and that he did have funds available with which he could have made restitution.

The second is that the Government believes it will be prepared to prove *that Mr. Carfora committed crimes after March, 1972, and will be able to file an amended or supplemental probation violation.* [Emphasis added.]

Later in the same hearing, Judge Gurfein remarked to Carfora:

There is only one reason I haven't revoked your probation, and that is because I don't want to put a man in under circumstances where it looks as though I am doing it because he is a poor man and for no other reason, but it seems to me the thing bristles with other reasons, if it develops.

no question that the demands of due process extend to proceedings for revocation of probation. Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).[4] Carfora contends that an essential element of due process is written notice of the specific charges which form the basis of an attempt to revoke probation. *Gagnon*, 411 U.S. at 786, 93 S.Ct. 1756; *Morrissey*, 408 U.S. at 488–489, 92 S.Ct. 2593. The Government does not claim that it ever filed a written amendment to its petition or specification of charges, as it apparently represented it would. See note 3 supra.[5] Instead, the Government argues that the requirements of due process were met since Carfora received oral notice of the additional charges and a full opportunity to confront and controvert the evidence against him. I express no view on these issues, except to observe that the due process questions are substantial. (Contrast, for example, the generality of the oral notice, quoted in note 3 supra, with the specificity of the written charges in the revocation petition, quoted in note 1 supra.) However, I think it inappropriate to consider and decide grave constitutional issues, if this is unnecessary.

Accordingly, I would remand so that the district court can clarify the basis of the probation revocation, making such supplemental findings, on the record as it now exists, as are appropriate. For the reasons already stated, affirmance on the present record is unjustified.

4. In *Gagnon* (probation) and in *Morrissey* (parole), the Supreme Court addressed itself to the requirements of due process in revocation proceedings before administrative officials. I see no reason why such requirements would not be at least as strict where the revocation proceeding is held before the sentencing judge.

5. It is notable that, at the very last hearing on January 30, 1973, the judge stated to counsel for the Government:

What I need from you is a succinct statement of what you claim are the grounds for the revocation of probation, and you can have the assistance of the probation department in that. Get that for me, we will close the hearings then and I will see what we can do.

Subsequently, after all the evidence was in, the Government did produce a memorandum of law listing the specific charges of unethical business conduct it was making against Carfora.